FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENETH MOLINA-VILLALOBOS,

    Defendant - Appellant.

No. 17-1411
(D.C. No. 1:15-CR-00360-RM-3)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **SEYMOUR**, and **KELLY**, Circuit Judges.
_____

Defendant Keneth Molina-Villalobos was arrested in March 2016 for his

involvement in a cocaine trafficking conspiracy. On August 15, 2017, he pled guilty to

four separate counts of possession of cocaine with the intent to deliver in violation of 21

U.S.C. §§ 841 and 846. At the sentencing hearing the district court declined to apply a

safety-valve adjustment under 18 U.S.C. § 3553(f). It sentenced Mr. Molina-Villalobos

to a term of imprisonment of 120 months—the statutory mandatory minimum for the

crimes he committed. Mr. Molina-Villalobos appeals, contending the district court

clearly erred in finding that he failed to truthfully provide the government with all

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

information and evidence concerning his offenses as required for a safety valve reduction. We affirm.

Between December 2013 and March 2016, Keneth Molina-Villalobos participated in a cocaine trafficking conspiracy. His involvement included removing hidden bricks of cocaine from "load cars," packaging currency that was the proceeds of illegal drug distribution and secreting it in these vehicles, and transporting load cars and members of the conspiracy around the Denver metro area to facilitate the loading and unloading of drugs and money. In March 2016, he was arrested at his residence.

Mr. Molina-Villalobos consented to an immediate post-arrest interview with law enforcement during which he admitted his role and provided other information and evidence regarding the conspiracy. He was later charged with four federal drug conspiracy and distribution offenses and pled guilty to all four counts without a plea agreement. At his change of plea hearing, he submitted a "Revised Factual Basis" which once again outlined the facts of the conspiracy and his involvement.

Based on the information he provided to the government, Mr. Molina-Villalobos requested a safety-valve adjustment pursuant to 18 U.S.C. § 3553(f) and § 5C1.2(a) of the United States Sentencing Guidelines. The government and the probation office both opposed this request. Mr. Molina-Villalobos asserted that he had truthfully provided the government all the information he had in his "lengthy post-arrest interview." Rec., Supp. Vol. I at 28. He argued that his "relatively minor role in the conspiracy combined [with] his prior [] on the job injury in January of 2013 resulting in memory loss and the heavy use of doctor prescribed pain medication" limited his ability to provide further

2

information.  *Id.*  The government objected, asserting that Mr. Molina-Villalobos "provided a very vague explanation of his involvement in the offenses and was unwilling to explain, in any degree of detail, the roles of other people."  *Id*. at 250.  The government also asserted that the post-arrest interview "was characterized by minimization of his own misconduct and a lack of details."  *Id*. at 251.  After reviewing the record and listening to the arguments of both the government and defense counsel, the district court denied Mr. Molina-Villalobos a safety-valve adjustment.

The only issue on appeal is whether the district court correctly determined that Mr. Molina-Villalobos did not meet the requirements of the safety valve provision, which provides that the district court must impose a sentence pursuant to the guidelines without regard to any statutory minimum if a defendant meets five criteria.  These criteria are:

(1) The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) The offense did not result in death or serious bodily injury to any person;

(4) The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not

3

> preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. 3553(f). Because the government concedes that Mr. Molina-Villalobos met the first four requirements, the only remaining issue is whether he truthfully provided to the government *all* information and evidence he had concerning the conspiracy.

"[T]he fifth criterion is very broad, requiring disclosure of everything the defendant knows about his own actions and those who participated in the crime with him." *United States v. Galvon-Manzo*, 642 F.3d 1260, 1266 (10th Cir. 2011) (internal citation and quotation marks omitted). A defendant's disclosure "must not merely be truthful but also complete." *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1098 (10th Cir. 2007) (citation omitted). A defendant is thus required to truthfully disclose to the government all he knows "about his own actions and those of his coconspirators." *United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995). It is the defendant's burden to prove by a preponderance of the evidence that he met this requirement. *Id*. Absent a favorable recommendation from the government, as was the case here, a defendant may put on evidence at the sentencing hearing to meet his burden. *United States v. Cervantes*, 519 F.3d 1254, 1258 (10th Cir. 2008).

"We review a district court's factual determination on safety valve eligibility for clear error, including whether a defendant has provided the government with complete and truthful information. *Galvon-Manzo*, 642 F.3d at 1265–66 (citation omitted).[1] "A

---

[1] There is a disagreement between the parties about what standard of review is applicable to Mr. Molina-Villalobos' argument that the district court did not adequately

4

district court's factual finding is clearly erroneous only if it is without factual support in the record or if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Patron-Montano*, 223 F.3d 1184, 1188 (10th Cir. 2000) (internal citation, quotation marks and brackets omitted).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City*, 470 U.S. 564, 573–574 (1985). "And this deferential standard of review applies equally regardless of whether the district court's factual findings are based on credibility determinations or on documentary evidence." *United States v. Hargrove*, 911, F. 3d 1306, 1325 (10th Cir. 2019) (internal citation and quotation marks omitted).

Mr. Molina-Villalobos claims he met his burden to show that he told the government everything he knew about the conspiracy. He asserts that he "provided a full and complete description of his role," Aplt. Br. at 5, and "gave a fulsome account of the other members of the conspiracy" in his post-arrest interview, "[holding] nothing back,

---

consider the entire record (specifically the change of plea and "Revised Factual Basis"). The government contends we should review for plain error because Mr. Molina-Villalobos relied only on his post-arrest interview when seeking the safety valve reduction in district court. The government then contends that appellate review of this issue is entirely waived because Mr. Molina-Villalobos did not argue plain error in his brief on appeal. We need not decide this issue because we conclude Mr. Molina-Villalobos has not shown that the district court clearly erred, the easier standard he claims is applicable.

other than perhaps the extent or details of his own involvement," *Id.* at 17. He describes his own role in the conspiracy as minor and maintains that the information he volunteered in his post-arrest interview encompasses the full extent of his knowledge of the conspiracy. Without conceding that he minimized his own role in the post-arrest interview, he nevertheless contends that any potential minimization at the initial post-arrest interview was rectified and completely addressed by the written factual basis later submitted in support of his guilty plea.

Mr. Molina-Villalobos argues that the body of evidence when reviewed *in its entirety* contradicts the district court's determination that he did not fully and completely divulge his knowledge. Although he acknowledged in oral argument that there may be some inconsistencies in the information he provided, he contends these were insignificant matters that did not undermine the big picture conclusion that he was forthcoming about all aspects of the conspiracy. We are not persuaded.

In its decision to deny Mr. Molina-Villalobos' safety valve request, the district court explained that, although Mr. Molina-Villalobos indeed provided some information regarding the conspiracy, he did not provide all he knew. The court enumerated several examples of statements it determined to be incomplete or untruthful, thereby undermining Mr. Molina-Villalobos' credibility. For example, Mr. Molina-Villalobos was asked "who recruited you? Did [Mr. Lozano] recruit you? How did you get into this?" Rec., vol. II at 57. He replied, "I got into this . . . because of my back, you know. You don't have any choices." *Id*. The district court was not impressed with this explanation. Addressing Mr. Molina-Villalobos' injury and alleged memory loss, the court reasoned that "pain or

cognitive issues aside, *How did you get into this*, you ought to be able to say something other than, *My back hurt*." *Id.* at 66. Even allowing for the potential of some memory loss as a result of Mr. Molina-Villalobos' injury, which the district court did not discount, the court reasoned that the information provided by Mr. Molina-Villalobos was not sufficient to meet the high standard required for the safety valve reduction, which is *everything* the defendant knows.

Reviewing the evidence in the light most favorable to the government, as we must, we conclude that Mr. Molina-Villalobos has not met his burden. He was evasive during his post-arrest interview, attempting to avoid and shade facts already known to the interviewing officers. He did not accept subsequent government offers to participate in a formal debriefing, and he does not contest the government's assertion at the sentencing hearing that the reason offered for his refusal was not lack of memory or lack of additional information to provide but simply that he didn't want to do it. Although he had the right to do so, Mr. Molina-Villalobos did not put on any additional evidence at the sentencing hearing to rebut the district court's examples that illustrated he was not completely truthful and forthcoming as required. Moreover, neither his opening nor reply brief on appeal specify any facts at his change of plea hearing that meaningfully supplemented the information offered in his original interview, undermining his argument that the district court committed clear error by focusing solely on the post-arrest interview.

As the district court stated at the sentencing hearing, "[t]he requirement is that he provide not *enough*, but that he provide *all* information and evidence that the defendant

7

has concerning the offense or offenses, part of the same course of conduct or common scheme or plan." *Id.* at 56–57 (emphasis added). "[G]iven that Mr. [Molina-Villalobos] had the burden of proof, the district court had little in his favor before it." *Cervantes*, 519 F.3d at 1257. Accordingly, the district court did not clearly err in finding that Mr. Molina-Villalobos failed to prove by a preponderance of the evidence that he made a complete and truthful disclosure of all the information he knew.

For the foregoing reasons, we AFFIRM.

Entered for the Court

Stephanie K. Seymour
Circuit Judge